1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   PAIMAN RAHBARIAN,              No.  2:14-cv-01488 JAM-KJN

12              Plaintiff,

13        v.                         **ORDER GRANTING IN PART AND
                                     DENYING IN PART DEFENDANT'S**
14   JP MORGAN CHASE; and DOES 1    **MOTION TO DISMISS AND DENYING**
     through 20 inclusive,           **DEFENDANT'S REQUEST TO EXPUNGE**
15                                   **LIS PENDENS**
              Defendant.
16

17        Before the Court is Defendant JPMorgan Chase Bank's

18   ("Defendant") motion to dismiss Plaintiff Paiman Rahbarian's

19   ("Plaintiff") complaint that alleges chain-of-title defects and

20   procedural irregularities in Defendant's servicing of the

21   mortgage on his home.  For the following reasons, Defendant's

22   motion is GRANTED in part and DENIED in part.[1]

23

24        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

25        Attar Fakhri, Plaintiff's mother, took out a mortgage on her

26   

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for October 15, 2014.

                                    1

1  home in 2007.  Compl. ¶¶ 14, 19.  The Deed of Trust named

2  California Reconveyance ("CRC") as trustee and Washington Mutual

3  as lender and beneficiary.  Compl. ¶ 14.  Plaintiff states, "on

4  information and belief," that Washington Mutual transferred the

5  mortgage to "WaMu Mortgage Pass-Through Certificate Series 2007-

6  OA4."  Compl. ¶ 15.  This entity then "filed a Form 10-K with the

7  SEC and was dissolved."  Compl. ¶ 16.  Dissolution caused "the

8  assets," including Plaintiff's mother's mortgage, to be

9  distributed to the certificate holders.  Id.  Washington Mutual

10  then itself dissolved, conveying its assets to Defendant.  Compl.

11  ¶ 17.  Plaintiff alleges that his mother's mortgage was not among

12  these assets now owned by Defendant, because it was previously

13  transferred to the certificate holders.  Compl. ¶ 38.

14       Following his mother's death in 2011, Plaintiff took

15  possession of the mortgaged home.  Compl. ¶¶ 4, 19-20.  Plaintiff

16  soon defaulted on the mortgage, and CRC issued a Notice of

17  Default and Election to sell, dated March 12, 2013.  Compl. ¶ 22.

18  On that same day, CRC recorded a "Corporate Assignment of Deed of

19  Trust," signed by Colleen Irby as Vice President of JPMorgan

20  Chase.  Compl. ¶ 21.  Plaintiff "alleges on information and

21  belief that Colleen Irby is an employee of CRC, not JP Morgan

22  Chase and is, in face [sic], a 'robo-signer.'"  Compl. ¶ 21.  CRC

23  later sent to Plaintiff a Notice of Trustee Sale.  Compl. ¶ 26.

24  But as of the date of filing the complaint, no sale had occurred.

25  See Compl. ¶ 27; id. at 9 ¶ 1.

26       Plaintiff brought this action in Placer County Superior

27  Court on May 16, 2014, alleging (1) violations of the California

28  Homeowner Bill of Rights ("HBOR"), (2) wrongful foreclosure, and

2

(3) violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.).  Plaintiff then filed a motion for a temporary restraining order, which the state court tentatively denied on the basis that Plaintiff failed to file proof of service.  RJN Exh. 10, at 7.  He also filed a Notice of Pendency of Action (lis pendens).  See RJN Exh. 11.  After removing the case to this Court, Defendant now moves to dismiss all causes of action for failure to state a claim (Doc. #5). Plaintiff opposes the motion (Doc. #14) and Defendant has replied (Doc. #15).


II.   OPINION

A.   Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  In considering a motion to dismiss, a district court must accept all the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Assertions that are mere "legal conclusions" are therefore not entitled to the presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678

1  (2009) (citing Twombly, 550 U.S. at 555).

2      Upon granting a motion to dismiss for failure to state a

3  claim, a district court has discretion to allow leave to amend

4  the complaint pursuant to Federal Rule of Civil Procedure 15(a).

5  A court should freely grant leave to amend.  Fed. R. Civ. Proc.

6  15(a)(2).  A court "is generally required to grant the plaintiff

7  leave to amend, even if no request to amend the pleading was

8  made, unless amendment would be futile."  Cook, Perkiss & Liehe,

9  Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th

10  Cir. 1990).  Amendment is not futile if the plaintiff could

11  "cure the defect requiring dismissal 'without contradicting any

12  of the allegations of [the] original complaint.'"  Plascencia v.

13  Lending 1st Mortgage, 583 F. Supp. 2d 1090, 1095 (N.D. Cal.

14  2008) (quoting Reddy v. Litton Indus., Inc., 912 F.2d 291, 296

15  (9th Cir. 1990)) (alteration in original).

16      B.   Judicial Notice

17      Generally, the Court may not consider material beyond the

18  pleadings in ruling on a motion to dismiss. However, the Court

19  may take judicial notice of matters of public record, provided

20  that they are not subject to reasonable dispute.  Fed. R. Evid.

21  201; see Santa Monica Food Not Bombs v. City of Santa Monica,

22  450 F.3d 1022, 1025 n.2 (9th Cir. 2006); Lee v. City of Los

23  Angeles, 250 F.3d 662, 689 (9th Cir. 2001).

24      Defendant here requests that the Court judicially notice

25  eleven documents, to which Plaintiff makes no objection.  Of the

26  eleven, six were recorded with the Placer County Recorder and

27  four were filed in state court: (1) Deed of Trust (RJN Exh. 1);

28  (2) Assignment of the Deed of Trust (RJN Exh. 2); (3) Notice of

4

1    Default (RJN Exh. 4); (4) Notice of Trustee's Sale recorded on

2    August 23, 2013 (RJN Exh. 5); (5) Substitution of Trustee (RJN

3    Exh. 6); (6) Notice of Trustee's Sale recorded on February 26,

4    2014 (RJN Exh. 7); (7) Plaintiff's application for a temporary

5    restraining order (RJN Exh. 8); (8) Plaintiff's declaration

6    filed as part of his application for a temporary restraining

7    order (RJN Exh. 9); (9) Tentative ruling of the Placer County

8    Superior Court regarding the temporary restraining order (RJN

9    Exh. 10); and (10) Notice of pendency of action filed by

10   plaintiff in Superior Court (RJN Exh. 11).  Since these

11   documents are in the public record, the Court takes judicial

12   notice of them. However, as to the four documents filed in state

13   court, this Court only takes judicial notice of the fact that

14   they were filed and any facts contained in these court filings

15   which are disputed may not be judicially noticed.

16       The final document, a Purchase and Assumption Agreement

17   between Defendant and the Federal Deposit Insurance Corporation

18   ("FDIC") is publicly available on a government website

19   (www.fdic.gov), so it too is the proper subject of judicial

20   notice.  See Mitchell v. Wells Fargo Bank, N.A., 2014 U.S. Dist.

21   LEXIS 7803, at *9 (N.D. Cal. Jan. 21, 2014) (noticing a document

22   on the same website); Paralyzed Veterans of Am. v. McPherson,

23   2008 U.S. Dist. LEXIS 69542, at *7 (N.D. Cal. Sept. 9, 2008)

24   (collecting cases in which a court judicially noticed material

25   on government websites).

26       C.   Discussion

27            1.   First Cause of Action: Homeowner Bill of Rights

28       Plaintiff's first cause of action alleges violations of the

5

Homeowner Bill of Rights ("HBOR") on the grounds that Defendant (1) failed to "provide notice to Plaintiff that he could request certain information from Defendant"; (2) failed to establish a single point of contact and "[i]nstead[] [] used multiple points of contact"; and (3) "ha[d] Colleen Irby, a CRC employee, robosign the Corporate Assignment of the Deed of Trust." Compl. ¶¶ 32-34.

         a.   <u>Failure to provide notice under California Civil Code § 2923.55</u>

Defendant argues that Plaintiff's allegation that it failed to provide notice is insufficient, because the Notice of Default "[was] accompanied by a declaration of compliance[,] which demonstrates that Chase did in fact comply with the requirements of § 2923.55." Mot. at 6:20-21. That declaration, submitted by Defendant as RJN Exhibit 4, states, "The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.55 because:  The real property is not owner-occupied residential property as defined by the statute."  RJN Exh. 4, at 4.

Defendant relies on <u>Maguca v. Aurora Loan Servs.</u>, 2009 U.S. Dist. LEXIS 104251 (C.D. Cal. Oct. 28, 2009) and <u>Dorado v. Shea Homes Ltd. P'ship</u>, 2011 U.S. Dist. LEXIS 97672 (E.D. Cal. Aug. 31, 2011), holding them out as examples of cases in which "allegations of non-compliance fail[ed] in the presence of [] a declaration [of compliance]." Mot. at 6:21-27. But neither case is relevant here.  <u>Maguca</u> and <u>Dorado</u>, which were both decided before HBOR's effective date (January 1, 2013), considered California Civil Code section 2923.5 — a different

1  statutory provision from the one at issue here: California Civil

2  Code section 2923.55.  Dorado, 2011 U.S. Dist. LEXIS 97672, at

3  *49; Maguca, 2009 U.S. Dist. LEXIS 104251, at *5.

4      Section 2923.5 requires merely that a notice of default

5  "include a declaration" stating that an authorized agent has

6  contacted (or attempted to contact) the borrower.  Cal. Civ.

7  Code § 2923.5(b).  Therefore, a defendant may defeat allegations

8  that it failed to comply with that section by submitting a

9  judicially noticed notice of default showing that the required

10  declaration was attached.  See Dorado, 2011 U.S. Dist. LEXIS

11  97672, at *49; Maguca, 2009 U.S. Dist. LEXIS 104251, at *5.

12      In contrast, section 2923.55 requires that the loan

13  servicer provide "[a] statement that the borrower may request"

14  certain information, including a copies of the promissory note,

15  the deed of trust, "any assignment . . . demonstrat[ing] the

16  right of the mortgage servicer to foreclose[,]" and the

17  borrower's payment history.  Cal. Civ. Code § 2923.55(b).  This

18  provision is not satisfied by a "declaration"; it is only

19  satisfied by a writing containing the proper information.  Id.

20      The "declaration of compliance" Defendant submitted does

21  not contain any such writing.  Nor does it even state that such

22  a writing was provided to Plaintiff.  Instead, it proclaims that

23  Defendant "was not required to comply with [] Section

24  2923.55[.]"  RJN Exh. 4, at 4.  Whether Defendant was required

25  to comply is a legal question that is not resolved by

26  Defendant's own determination that it was exempt from the terms

27  of the statute.  Whatever evidentiary value this declaration has

28  — if any — it does not preclude Plaintiff's claim that Defendant

1   never provided the written notice required by section 2923.55.

2   In fact, it corroborates Plaintiff's claim that he did not

3   receive notice, since Defendant apparently considered itself

4   exempt.

5        To the extent that Defendant urges dismissal based on a

6   theory that it was exempt,[2] the Court also rejects that argument.

7   Defendant states, "§ 2923.55 only applies to mortgages . . . as

8   described in § 2924.15.  [citation omitted]  In relevant part,

9   § 2924.15 defines 'owner-occupied' property as property that is

10  'the principal residence of the borrower and is security for a

11  loan . . . .'"  Mot. at 6:16-19.  Defendant appears to suggest

12  that Plaintiff's property was not "owner-occupied."  See RJN

13  Exh. 4, at 4.  However, the complaint directly contradicts this

14  contention.  See Compl. ¶ 4 (stating that the property is

15  "Plaintiff's principal and family residence").  Because the

16  Court must take the allegations in the complaint as true,

17  Defendant's motion to dismiss Plaintiff's first cause of action

18  is DENIED as it relates to a violation of California Civil Code

19  section 2923.55.

20              b.   <u>Failure to create a single point of contact</u>
                     <u>under California Civil Code § 2923.7</u>
21

22       Defendant urges this Court to dismiss Plaintiff's claim that

23  it failed to provide a single point of contact, arguing that

24  Plaintiff's allegation "lacks factual support" and is precluded

25  by his "admission that he was assigned a 'designated point of

26

27  _____

    [2] Defendant's brief leaves unclear whether it is advancing this
    argument or merely noting that its employee previously made the
28  determination that it need not comply.

                              8

1    contact[.]'"  Mot. at 6:8-9 (citing RJN Exh. 9).  Plaintiff does

2    not address these arguments, but simply reiterates his claim that

3    Defendant violated HBOR by "shuffl[ing] multiple points of

4    contact[.]"  Opp. at 5:22-23 (citing Compl. ¶ 33).

5         Section 2923.7 requires loan servicers to "promptly

6    establish a single point of contact and provide to the borrower

7    one or more direct means of communication with the single point

8    of contact."  Cal. Civ. Code § 2923.7(a).  A bank violates this

9    provision if it assigns a single point of contact, but then

10   changes that point of contact multiple times.  See Mann v. Bank

11   of Am., N.A., 2014 U.S. Dist. LEXIS 15111, at *12-*14 (C.D. Cal.

12   Feb. 3, 2014).

13        Plaintiff here has alleged that Defendant "used multiple

14   points of contact."  Compl. ¶ 33.  This statement is the only

15   allegation contained in the complaint relating to Plaintiff's

16   section 2923.7 claim.  No facts explain who the points of contact

17   were, how many different points of contact Defendant assigned, or

18   the circumstances or timing of such reassignments.  See Mann,

19   2014 U.S. Dist. LEXIS 15111, at *12-*13 (denying motion to

20   dismiss where plaintiffs described six reassignments to different

21   points of contact over three months).  Without any such factual

22   support, the allegation that Defendant violated section 2923.7 by

23   "us[ing] multiple points of contact" is insufficient.  Cf.

24   Lawrence v. Wells Fargo Bank, N.A., 2014 WL 2705425, at *12 (N.D.

25   Cal. June 13, 2014) (finding that plaintiff had "not pled any

26   facts in support of [his UCL] claim" where plaintiff alleged that

27   the bank "failed to provide a Single Point of Contact who was

28   prepared to dismiss [sic] foreclosure prevention alternatives

1   with Plaintiff").

2       Although this claim is insufficient as pled, the Court must

3   grant leave to amend.  Contrary to Defendant's representations,

4   Plaintiff's section 2923.7 claim is not fatally contradicted by

5   judicially noticed documents.  In particular, Defendant argues

6   that Plaintiff's claim "is belied by" a declaration (filed in

7   support of Plaintiff's application for a temporary restraining

8   order in state court) in which Plaintiff stated, "Shane Gowitt is

9   my designated point of contact."  Reply at 2:27; RJN Exh. 9 ¶ 8.

10      First of all, the Court may not judicially notice the

11  purported fact that Defendant properly appointed Shane Gowitt as

12  Plaintiff's single point of contact, as Defendant urges.  See Lee

13  v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)

14  (reiterating that a court "may not take judicial notice of

15  disputed facts stated in public records") (emphasis in original).

16      Even if the Court could notice it, that fact does not

17  fatally contradict Plaintiff's allegation that he was shuffled

18  between different points of contact in violation of section

19  2923.7.  Namely, even if Defendant assigned Shane Gowitt as

20  Plaintiff's point of contact, it still could have violated

21  section 2923.7 by "us[ing] multiple points of contact[,]" as

22  Plaintiff alleges.  For instance, it could have subsequently (or

23  previously) reassigned the point of contact.  See, e.g., Mann,

24  2014 U.S. Dist. LEXIS 15111, at *12-*14.  Or it could have had

25  other individuals improperly interact with Plaintiff instead of

26  Shane Gowitt.  See, e.g., Mungai v. Wells Fargo Bank, 2014 WL

27  2508090, at *3, *10 (N.D. Cal. June 3, 2014) (denying motion to

28  dismiss section 2923.7 claim where plaintiff alleged that "[w]hen

                                  10

1   [she] attempted to contact Goode[,] [her designated point of

2   contact], she was referred to other Wells Fargo representatives,

3   none of which [sic] could apprise Plaintiff of the status of her

4   loan modification application and all of whom referred Plaintiff

5   to Goode"). Plaintiff could therefore cure the defects in his

6   section 2923.7 pleadings "without contradicting any of the

7   allegations of [his] original complaint." <u>Plascencia</u>, 583 F.

8   Supp. 2d at 1095.

9        Accordingly, the Court GRANTS WITH LEAVE TO AMEND

10  Defendant's motion to dismiss the first cause of action as it

11  relates to California Civil Code section 2923.7.

12              c.   "Robosigning" in violation of California
                     Civil Code § 2924.17
13

14       Defendant seeks to dismiss Plaintiff's claim that Colleen

15  Irby "robosign[ed]" the assignment of Plaintiff's deed of trust

16  on the basis that he has not pled "harm[]." Mot. at 6.

17       HBOR directs that "[b]efore recording or filing [certain

18  documents including the assignment of a deed of trust], a

19  mortgage servicer shall ensure that it has reviewed competent

20  and reliable evidence to substantiate the borrower's default and

21  the right to foreclose, including the borrower's loan status and

22  loan information." Cal. Civ. Code § 2924.17. Failing to

23  conduct such review before signing is known as "robo-signing."

24  <u>Michael J. Weber Living Trust v. Wells Fargo Bank, N.A.</u>, 2013

25  U.S. Dist. LEXIS 41797, at *10 (N.D. Cal. Mar. 25, 2013). A

26  borrower may bring a cause of action for injunctive relief based

27  on robosigning allegations prior to foreclosure sale. Cal. Civ.

28  Code § 2924.12(a).

1   To support its argument for dismissal for failure to plead

2   harm, Defendant cites Nastrom v. New Century Mortg. Corp., 2012

3   U.S. Dist. LEXIS 79929 (E.D. Cal. June 8, 2012).  But Defendant

4   has failed to persuade this Court that the harm requirement

5   discussed in Nastrom applies to claims under section 2924.17.

6   The whole of the relevant reasoning in Nastrom states,

7   "Plaintiffs offer no factual allegations (or legal theory)

8   indicating how the alleged robo-signing of documents which

9   assigned the subject loans harmed Plaintiffs.  The robo-signing

10  allegations do not relate to any notice of default or otherwise

11  demonstrate that Plaintiffs were somehow defrauded or harmed by

12  the loan assignments."  Id. at *15-*16.  Nastrom does not cite

13  any cases and leaves unclear the origin of this harm

14  requirement.

15  Defendant is correct in the sense that prior to HBOR,

16  plaintiffs were required to show harm or prejudice to proceed on

17  a robosigning claim.  See Mendoza v. JPMorgan Chase Bank, N.A.,

18  228 Cal.App.4th 1020, 1037 (2014), rev. filed (Sept. 23, 2014)

19  (noting the "prevailing view" that a plaintiff generally "lacks

20  standing to contest the validity of a robo-signature, because

21  his foreclosure was the result of not making payments and

22  entering default, such that he did not suffer an injury as a

23  result of the assignment of deed of trust") (quoting Bennett v.

24  Wells Fargo Bank, N.A., 2013 WL 4104076, at *5-*6 (N.D. Cal.

25  Aug. 9, 2013)) (quotation marks omitted).  However, HBOR

26  included a provision specifically granting a private cause of

27  action to borrowers in cases where loan servicers engaged in

28  robosigning and certain other violations of sections 2923 and

12

2924.  This provision reads:

> (1) . . . [A] borrower may bring an action for
> injunctive relief to enjoin a material violation of
> [various statutes including section 2924.17].
> (2) Any injunction shall remain in place and any
> trustee's sale shall be enjoined until the court
> determines that the mortgage servicer, mortgagee,
> trustee, beneficiary, or authorized agent has
> corrected and remedied the violation or violations
> giving rise to the action for injunctive relief.  An
> enjoined entity may move to dissolve an injunction
> based on a showing that the material violation has
> been corrected and remedied.

Cal. Civ. Code § 2924.12(a).

Notably, this language does not include a requirement that a plaintiff demonstrate harm or injury.  The plain meaning thus indicates that no showing of harm is required.

The parties have also failed to cite any cases indicating that section 2924.12 incorporates the pre-HBOR harm requirement. To the contrary, the legislature intended HBOR to alter the nonjudicial foreclosure process and increase enforcement opportunities.  See Cal. SB 900 § 1 ("It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options."); Vasquez v. Bank of Am., N.A., 2013 WL 6001924, at *7 (N.D. Cal. Nov. 12, 2013) ("[The] pre-HBOR cases cited by Defendants discussing the defunct version of 2923.6 have little, if any, applicability to . . . the now-applicable law.  Perhaps even more importantly, HBOR also added Section 2924.12 . . . .

13

1  Section 2924.12 expressly provides that borrowers may bring an

2  action based on a violation of the new Section 2923.6[.]").

3       The Court holds therefore that Plaintiff need not plead

4  harm to make a claim under section 2924.12(a) for a violation of

5  section 2924.17.  The plain language of section 2924.12(a)

6  includes no such requirement and the Court declines to read one

7  in.  To the extent that other courts have addressed the issue,

8  they have not required a showing of harm.  See Rothman v. U.S.

9  Bank Nat'l Ass'n, 2014 WL 1648619, at *7 (N.D. Cal. Apr. 24,

10 2014) (denying motion to dismiss section 2924.17 claim, but

11 granting motion to dismiss other claims because plaintiff did

12 not plead harm); Copeland v. Ocwen Loan Servicing, LLC, 2014 WL

13 304976, at *5 (C.D. Cal. Jan. 3, 2014) ("Defendants also argue

14 that [plaintiff] has no claim under [HBOR] because he has

15 suffered no damages . . . .  However, [plaintiff] does claim

16 that he incurred damages.  And what's more, [HBOR] provides for

17 statutory damages in the event of a violation.") (citing Cal.

18 Civ. Code § 2924.12) (citations to the record omitted).  The

19 Court therefore declines to dismiss Plaintiff's claim on this

20 basis.

21      The Court notes that although section 2924.12(a) does not

22 have a "harm" requirement, it only allows actions for "material"

23 violations of 2924.17.  See Cal. Civ. Code § 2924.12(a)(1).

24 Defendant has not argued that the alleged violations were not

25 material.  Defendant does cite one case that discusses the

26 materiality requirement: Johnson v. PNC Mortgage, 2014 WL

27 3962662, at *13 (N.D. Cal. Aug. 12, 2014).  However, Defendant

28 cites this case only in its reply, and for a different

1   proposition.  See Reply at 2:12-19 (arguing that Johnson held

2   that allegations similar to Plaintiff's were conclusory).

3   Defendant's brief does not mention materiality or section

4   2924.12, but it then states, "Furthermore, the [Johnson] court

5   noted that even if plaintiffs' [robosigning] theory were

6   correct, 'the assignment would not have changed their payment

7   obligations.  It would have affected the lender and notice to

8   future encumbrancers and purchasers (but not Pliantiffs).'"

9   Reply at 2:15-18 (quoting Johnson, 2014 3962662, at *13).

10       Even if Defendant's discussion of Johnson were enough to

11   raise the materiality issue, the Court need not reach it and

12   declines to do so here.  See Zamani v. Carnes, 491 F.3d 990, 997

13   (9th Cir. 2007) ("The district court need not consider arguments

14   raised for the first time in a reply brief.") (citing Koerner v.

15   Grigas, 328 F.3d 1039, 1048 (9th Cir. 2003)).

16       Moving to Defendant's other arguments for dismissal,

17   Defendant contends that the section 2924.17 allegations are

18   conclusory and lack factual support.  Mot. at 4-5.  The Court

19   agrees.

20       The complaint states that Defendant violated section

21   2924.17 "by having, Colleen Irby, a CRC employee, robosign the

22   Corporate Assignment of the Deed of Trust."  Compl. ¶ 34.  The

23   only factual allegation supporting this claim is that "on

24   information and belief[,] [] Colleen Irby is an employee of CRC,

25   not JP Morgan Chase and is, in face [sic], a 'robo-signer.'"

26   Compl. ¶ 21.

27       Such "bare assertion[s]" are insufficient.  See Johnson,

28   2014 WL 3962662, at *13 (dismissing section 2924.17 claim that

1    alleged that a document was "robosigned without reliance on

2    competent or reliable evidence to substantiate the right to

3    foreclose" in part because "the critical allegations — that

4    Commonwealth never assigned its interest to any party to the

5    assignment and that PNC 'robosigned' the assignment — are made

6    entirely on information and belief"); Baldoza v. Bank of Am.,

7    N.A., 2013 U.S. Dist. LEXIS 34323, at *37 (N.D. Cal. Mar. 12,

8    2013) (dismissing robosigning claim where plaintiff alleged, "on

9    information and belief, [that] Muradyan, a known robo-signer,

10   was not an employee of MERS but instead was employed by

11   Defendant BOA"); Sohal v. Federal Home Loan Mortg. Corp., 2011

12   WL 3842195, at *5 (N.D. Cal. Aug. 30, 2011) (granting motion to

13   dismiss in part because "Plaintiffs [did] not allege[] facts

14   setting forth the basis on which they [were] informed and

15   believe [the robosigning] allegations [were] true").

16        Plaintiff argues that his allegations do suffice, citing

17   Mena v. JP Morgan Chase Bank, N.A., 2012 U.S. Dist LEXIS 128585

18   (N.D. Cal. Sept. 7, 2012).  According to Plaintiff, Mena

19   involved "facts identical to the case at bar."  Opp. at 4:21.

20   But the Court finds Mena distinguishable in multiple ways.

21        First, Mena involved allegations of robosigning in support

22   of a slander of title claim, not a claim related to section

23   2924.17 or other statutorily-required due diligence.  Id. at

24   *13.

25        Second, the Mena plaintiffs' allegations were more

26   thoroughly pled than the complaint here.  The Mena plaintiffs

27   asserted that "the signatures on the relevant documents [were]

28   of 'robo-signers' who lacked the legal capacity to sign . . . .

                                  16

For example, "Deborah Brignac" [was] a 'robo-signer' whose name appear[ed] on documents for different companies." Id. at *13-*14 (citing complaint alleging instances where Brignac signed as "Vice President" of two different companies).

In contrast, the complaint here does not allege that Colleen Irby did not have authority to sign, nor that she failed to conduct the due diligence required by section 2924.17. Although this Court must take as true Plaintiff's allegation that Colleen Irby was an "employee of CRC, not JP Morgan Chase," Compl. ¶ 21, the Court need not infer that Irby therefore had no authority to sign or that she did not conduct statutorily-required due diligence. See Halajian v. Deutsche Bank Nat. Trust Co., 2013 WL 593671, at *6 (E.D. Cal. Feb. 14, 2013) ("'The mere fact that Derborah Brignac was not an employee of JPMorgan and Colleen Irby was not an employee of CRC does not give rise to a reasonable inference that they did not have the authority to sign documents on behalf of those companies.'") (quoting Couch v. JPMorgan Chase Bank, N.A., No. CV 11-8710-GHK, at *5 (C.D. Cal May 14, 2012)).

Plaintiff attempts to elaborate on his robosigning allegations in his opposition. See Opp. at 4 (citing Glaski v. Bank of Am., N.A., 218 Cal.App.4th 1079, 1086 n.8 (2013) for the proposition that Colleen Irby previously signed a document as "assistant secretary" for another company). But the Court may consider only the complaint and judicially noticed documents in evaluating the sufficiency of a claim upon a motion to dismiss. See Mayer v. Wedgewood Neighborhood Coal., 707 F.2d 1020, 1021 (9th Cir. 1983).

1      In sum, Plaintiff is correct that section 2924.17 was

2   intended to address "robosigning."  See Michael J. Weber Living

3   Trust, 2013 U.S. Dist. LEXIS 41797, at *10.  But as pled, his

4   allegations are insufficient.

5      For these reasons, the Court GRANTS WITH LEAVE TO AMEND

6   Defendant's motion to dismiss Plaintiff's claim under California

7   Civil Code section 2924.17.

8            2.   Second Cause of Action: Wrongful Foreclosure

9      Plaintiff's second claim alleges wrongful foreclosure on

10  the basis of California Civil Code section 2924(a)(6).

11  Defendant argues that the Court should dismiss this claim

12  because a foreclosure sale has not yet occurred.

13     Indeed, Plaintiff's claim fails because there has been no

14  sale.  "In at least some circumstances, California courts have

15  allowed wrongful foreclosure claims to proceed even when there

16  was not actual foreclosure."  Baldwin v. Am. Home Mortg.

17  Servicing, Inc., 2010 U.S. Dist. LEXIS 5671, at *40 (E.D. Cal.

18  Jan. 5, 2010) (citing Garretson v. Post, 156 Cal.App.4th 1508,

19  1514 (2007)); see, e.g., Pfiefer v. Countrywide Home Loans,

20  Inc., 211 Cal.App.4th 1250, 1281 (2012) (allowing foreclosure

21  action prior to sale where plaintiff alleged violations of HUD

22  servicing requirements).  But most courts hold that such claims

23  based on chain of title defects are premature if brought before

24  sale.  See, e.g., Pugh v. JPMorgan Chase Bank, N.A., 2013 U.S.

25  Dist. LEXIS 151873, at *8-*9 (E.D. Cal. Oct. 22, 2013); Manzano

26  v. MetLife Bank N.A., 2011 U.S. Dist LEXIS 56316, at *20 (E.D.

27  Cal. May 24, 2011); Rosenfeld v. JPMorgan Chase Bank, N.A., 732

28  F. Supp. 2d 952, 961 (N.D. Cal 2010); Rossberg v. Bank of Am.,

1   N.A., 219 Cal.App.4th 1481, 1493 (2013), rev. denied (Nov. 26,

2   2013) (citing Jenkins v. JP Morgan Chase Bank, N.A., 216

3   Cal.App.4th 497, 511-513 (2013); Gomes v. Countrywide Home

4   Loans, Inc., 192 Cal.App.4th 1149, 1154-56 (2011)).

5       Plaintiff has not pled that Defendant has already

6   instituted a foreclosure sale.  Therefore, Plaintiff's wrongful

7   foreclosure claim is premature and the Court must dismiss it.

8   Furthermore, amendment would be futile, because the complaint

9   acknowledges that no sale has occurred.  See Compl. at 9 ¶ 1

10  (seeking an injunction from this court prohibiting such sale).

11      Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND

12  Plaintiff's second cause of action.  Resolving this motion as to

13  the second claim on this basis, the Court does not reach the

14  other issues presented by the parties, including Plaintiff's

15  ability to tender outstanding debt, whether Defendant in fact

16  had authority to foreclose and to what extent it was required to

17  verify such authority.

18          3.   Third Cause of Action: Violation of UCL

19      Plaintiff's third claim asserts that Defendant engaged in

20  unlawful and unfair business practices under the UCL by

21  "violat[ing] [] HBOR" and "fail[ing] to ensure it ha[d] a

22  beneficial interest in the Subject Property prior to initiating

23  foreclosure proceedings."  Compl. ¶¶ 43-44.

24      Defendant argues that Plaintiff does not have standing to

25  raise this UCL claim.  Defendant is correct that the complaint

26  fails to demonstrate standing.

27      A plaintiff may bring an action under the UCL only if he

28  has "suffered injury in fact and has lost money or property as a

1   result of the unfair competition." Cal. Bus. & Prof. Code

2   § 17204.  The amendment adding this language to the UCL "plainly

3   preserved standing for those who had had business dealings with

4   a defendant and had lost money or property as a result of the

5   defendant's unfair business practices." Clayworth v. Pfizer,

6   Inc., 49 Cal.4th 748, 788 (2010) (emphasis omitted).  To show

7   standing, a plaintiff must "(1) establish a loss or deprivation

8   of money or property sufficient to qualify as injury in fact,

9   i.e., economic injury, and (2) show that that economic injury

10  was the result of, i.e., caused by, the unfair business practice

11  or false advertising that is the gravamen of the claim."

12  Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011)

13  (emphasis in original).

14      Plaintiff cites three cases to support his contention that

15  he has standing, Opp. at 10, however all three were decided

16  before Kwikset and none acknowledges or applies the causation

17  requirement.  See Rosenfeld, 732 F. Supp. 2d at 973; Rabb v. BNC

18  Mortg., Inc., 2009 WL 3045812, at *2 (C.D. Cal. Sept. 21, 2009);

19  Sullivan v. Wash. Mutual Bank, FA, 2009 WL 3458300, at *5 (N.D.

20  Cal. Oct. 23, 2009).  Each reiterates that imminent loss of a

21  home to foreclosure constitutes an injury, and for this

22  proposition the Court agrees with Plaintiff.  However, none of

23  these cases consider whether defendants' actions — rather than

24  the plaintiffs' own failures to keep current on their loans —

25  was the cause of the loss.

26      The Court relies instead on a post-Kwikset case involving

27  similar allegations to those advanced in this case, including

28  lack of authority to foreclose, defects in the chain of title,

1  and robosigning.  *See* *Jenkins*, 216 Cal.App.4th at 510, 519.  In

2  *Jenkins*, the plaintiff's home was in foreclosure proceedings,

3  but there had been no sale.  *Id.* at 522.  The court reasoned

4  that "[i]f such proceedings [were] pursued to their completion,

5  [the plaintiff's] interest in her property [would] be

6  extinguished."  *Id.*  Based on the prospect of losing a property

7  interest in her home, the plaintiff met her "minimal" burden in

8  pleading *Kwikset*'s first prong.  *Id.*

9      As to the second prong, the court held that the plaintiff

10  failed to plead that the defendant's behavior caused her injury.

11  *Id.* at 523.  The court reasoned that the plaintiff's failure to

12  make payments culminating in default — and not any wrongful act

13  by the defendant — had caused the imminent loss of her home.

14  *Id.*  Therefore, she could not demonstrate a "causal link."  *Id.*

15      Here, as in *Jenkins*, Plaintiff has pled an economic injury:

16  imminent loss of his property rights in his house if foreclosure

17  proceedings are to proceed.  *See* Compl. ¶¶ 22, 26.  Also as in

18  *Jenkins*, Plaintiff fails to establish a causal link between

19  Defendant's actions and his property loss.

20      Plaintiff argues that he has shown causation because

21  Defendant's "improper initiation of the foreclosure process . . .

22  harm[ed] Plaintiff."  Opp. at 10:13-15 (citing Compl. ¶ 44).  But

23  the foreclosure process was triggered by Plaintiff's default.

24  *See* Compl. ¶ 22.  Even in the absence of Defendant's alleged

25  "improper initiation" of foreclosure, Plaintiff still would have

26  defaulted, resulting in a lawful foreclosure.  *See* *Jenkins*, 216

27  Cal.App.4th at 523 ("Jenkins's default triggered the lawful

28  enforcement of the power of sale clause in the deed of trust, and

21

1    it was the triggering of the power of sale clause that subjected

2    Jenkins's home to nonjudicial foreclosure.").

3        Nor did the other allegedly unfair practices, as pled,

4    cause Plaintiff's default.  The complaint contains no facts

5    indicating that robosigning caused the default.  In fact, the

6    complaint eliminates this possibility, as the alleged

7    robosigning appears to have occurred after Plaintiff became

8    unable to pay his mortgage.  See Compl. ¶¶ 21-22 (alleging that

9    Colleen Irby robosigned a document on the same day that

10   Defendant issued a notice of default).  Similarly, the alleged

11   violation of failing to provide notice about documents occurred

12   after default.  See Cal. Civ. Code § 2923.55(a) & (b) (requiring

13   such notice to be sent with the notice of default).

14       Therefore, Plaintiff lacks standing to bring a UCL claim on

15   these bases, and it cannot be remedied upon amendment.  See

16   Jenkins, 216 Cal.App.4th at 523-24 (denying leave to amend

17   because alleged UCL violations occurred after plaintiff

18   defaulted on her loan, so there was no possibility that she

19   could establish causation upon amendment).  The Court

20   accordingly GRANTS WITHOUT LEAVE TO AMEND Defendant's motion as

21   to these bases for the UCL cause of action.  Given this result,

22   the Court does not reach Defendant's argument that the "unfair"

23   prong is not satisfied by the robosigning allegations.

24       As to Plaintiff's final basis for his UCL claim, Plaintiff

25   has not explained how failure to establish a single point of

26   contact could have caused his default.  But unlike the other

27   bases discussed above, failure to provide a single point of

28   contact could be an ongoing violation that potentially predated

22

1   — and potentially contributed to — his default.  See Penermon v.

2   Wells Fargo Bank, N.A., 2014 WL 2754596, at *12-*13 (N.D. Cal.

3   June 11, 2014).  Therefore, the Court GRANTS Defendant's motion,

4   but allows LEAVE TO AMEND as the UCL claim relates to failure to

5   provide a single point of contact.

6       Defendant's final argument is that Plaintiff cannot show a

7   violation of a predicate statute.  Mot. at 10.  The Court

8   reaches this issue only as to the UCL claim relating to failure

9   to provide a single point of contact, because the other bases

10  for this claim are dismissed without leave to amend.  The Court

11  disagrees with Defendant's argument, because the predicate HBOR

12  violation of section 2923.7 has survived the motion to dismiss.

13  See supra § II.C.1.a (denying motion to dismiss the first cause

14  of action).

15

16              4.   Defendant's request to expunge lis pendens

17      Defendant argues that "if this Court grants Defendant's

18  Motion to Dismiss, expungement of Plaintiff's recorded lis

19  pendens is also appropriate."  Mot. at 12:4-5.  As discussed

20  above, the Court partially grants but partially denies

21  Defendant's motion to dismiss.  Therefore, it denies Defendant's

22  request for expungement.

23

24              III.   ORDER

25      The Court DENIES Defendant's motion to dismiss as it relates

26  to Plaintiff's first cause of action for violation of California

27  Civil Code section 2923.55.  The Court GRANTS WITH LEAVE TO AMEND

28  Defendant's motion as to the remainder of the first cause of

1    action and as to the third cause of action as it relates to

2    failing to provide a single point of contact.   Finally, the Court

3    GRANTS WITHOUT LEAVE TO AMEND Plaintiff's second cause of action

4    and the remainder of the third cause of action.

5         Plaintiff must file his amended complaint within twenty (20)

6    days from the date of this order.   Defendant's responsive

7    pleading is due within twenty (20) days thereafter.

8         IT IS SO ORDERED.

9    Dated: November 10, 2014

10

11                                     _____
                                       JOHN A. MENDEZ,
                                       UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   24